**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Brian Dornellas *as trustee of the Shelly Collins Revocable Living Trust*,<br><br>Plaintiff,<br><br>v.<br><br>Massachusetts Mutual Life Insurance Company, et al.,<br><br>Defendants. | Case No.: 2:20-cv-00141-GMN-BNW<br><br>**REPORT AND RECOMMENDATION AND ORDER** |

Before the Court are two motions. First, Plaintiff and Defendant Brighthouse Life Insurance Company (Brighthouse) filed a joint motion for default judgment against George Schmidt (as Trustee of the Shelly Collins Testamentary Trust) and related relief. ECF No. 50. This motion is unopposed, and Plaintiff specifically filed a statement of non-opposition. ECF No. 56. Second, Defendant Massachusetts Mutual Life Insurance Company (MassMutual) filed a motion for determination of good faith settlement with Plaintiff. ECF No. 51. This motion is also unopposed, and Plaintiff again filed a statement of non-opposition. ECF No. 57. The Court will provide the relevant procedural background and then address each motion in turn.

**I.    Procedural Background**

Plaintiff alleges the following in his complaint: Plaintiff is the trustee of the Shelly Collins Revocable Living Trust. ECF No. 40 at 53 (complaint). Ms. Collins passed away in August 2018. *Id.* at 54. Before her passing, she signed a will that provided that a trust would be created upon her death and her estate would be placed in the trust. *Id.*

1   Ms. Collins utilized a financial advisor, George Schmidt, before her death to create this
2   trust and other legal documents. *See id.* However, Mr. Schmidt used these documents to steal
3   funds from Ms. Collins' annuities, one issued by Brighthouse and the other by MassMutual. *Id.*
4   at 55. Specifically, Brighthouse was to issue a death benefit of $307,374.87 to "George Schmidt
5   Trustee" of the Shelly Collins Revocable Living Trust upon Ms. Collins' death. *Id.* However,
6   Mr. Schmidt claimed the funds in his individual capacity and absconded with the money. *Id.* Mr.
7   Schmidt also represented to MassMutual that he was the trustee of Ms. Collins' trust before it
8   was created, withdrew funds, and absconded with the money. *Id.* To continue his ruse, Mr.
9   Schmidt prepared fake MassMutual and Brighthouse statements that he sent to Plaintiff. *Id.*
10  Plaintiff discovered Mr. Schmidt's theft in October 2019 when he contacted MassMutual and
11  Brighthouse himself and learned that Ms. Collins' accounts were depleted and that the statements
12  he received were fake. *Id.* at 56.

   Based on these facts, Plaintiff sued MassMutual and Brighthouse for negligence and
14  breach of contract. ECF No. 40 at 52-59.[1]

15  As is relevant to this order, Brighthouse answered and filed a counterclaim and third-
16  party complaint, naming Mr. Schmidt as Trustee of the Shelly Collins Testamentary Trust (Mr.
17  Schmidt) as a third-party defendant. ECF No. 13. Brighthouse alleged the following: In 2017,
18  Mr. Schmidt submitted a beneficiary change form signed by Ms. Collins that designated "George
19  Schmidt, Trustee" as the sole beneficiary to Ms. Collins' death benefits. *Id.* at 9-10. Ms. Collins
20  passed in 2018. *Id.* at 10. In 2019, Mr. Schmidt asserted a claim to the death benefit in his
21  individual capacity. *Id.* at 10-11. Brighthouse paid the death benefit ($307,374.87) to Mr.
22  Schmidt in his individual capacity. *Id.* at 11. Later in 2019, Plaintiff wrote Brighthouse,
23  informing it that he was now the sole trustee of Ms. Collins' trust and requesting information

---

[1] Plaintiff is pursuing claims against Mr. Schmidt in a different forum, which is required by a pre-dispute arbitration agreement. *See id.* at 56.

about the death benefits. *Id.* Plaintiff included a Certificate of Resignation of Trustee, indicating that Mr. Schmidt resigned as Trustee of the Trust in August 2019. *Id.* at 12.

Brighthouse acknowledged that paying Mr. Schmidt in his individual capacity was not consistent with the beneficiary form naming "George Schmidt, Trustee" as the beneficiary. *Id.* at 11. Brighthouse further stated that, to the extent the payment to George Schmidt did not match the terms of the contract, a death benefit remained due and owing to the proper beneficiary. *Id.* However, to the extent the beneficiary designation was invalid (given Plaintiff's allegations that Mr. Schmidt took advantage of Ms. Collins, presumably including with respect to his beneficiary designation), then the proper beneficiary is the Estate of Shelly Collins under the terms of the contract. *Id.* at 12. Under these circumstances, Brighthouse asserted that it cannot determine who is legally entitled to the death benefit. *Id.* at 13. However, Brighthouse stated it has no interest in the death benefit and will pay it to whomever this Court determines is the proper beneficiary. *Id.*

Mr. Schmidt was personally served with Brighthouse's counterclaim and third-party complaint on March 5, 2020. ECF No. 30. However, Mr. Schmidt did not answer or otherwise respond. Accordingly, on May 18, 2020, Brighthouse moved for entry of a clerk's default. ECF No. 42. The clerk granted this request. ECF No. 45. Now, Brighthouse moves for default judgment against Mr. Schmidt. ECF No. 50 at 5.

**II. Jurisdiction**

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332, as the parties in this case are diverse and the matter in controversy exceeds $75,000.[2] ECF No. 13 at 8.

**III. Brighthouse and Plaintiff's Joint Motion for Default Judgment and Related Relief (ECF No. 50)**

    **A.    Default Judgments**

---

[2] Plaintiff is a Georgia citizen; Brighthouse is a Delaware and North Carolina citizen; MassMutual is a Massachusetts citizen; and Mr. Schmidt is a New York citizen. *Id.*; ECF No. 10 at 2 (identifying MassMutual's citizenship); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (upon entry of default, all well-pled facts in the complaint are taken as true, except those relating to the amount of damages).

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter default judgment if the clerk previously entered default based on the defendant's failure to defend. After entry of default, the factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917-18; Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Whether to grant a default judgment lies within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In deciding whether to enter a default judgment, the court considers factors such as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72. A default judgment generally is disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Id.* at 1472.

### B.     Default Judgment in This Case

Here, the Court has discretion to enter a default judgment, as the clerk previously entered default based on Mr. Schmidt's failure to defend. *See* ECF No. 45. Accordingly, the Court considers the seven *Eitel* factors to determine if entering a default judgment is appropriate in this case.

*First,* the Court considers the possibility of prejudice to the Brighthouse. Brighthouse would be prejudiced if default judgment is not entered against Mr. Schmidt, as this would leave Brighthouse open to a potential claim from Mr. Schmidt over the disposition of funds. Accordingly, the first factor cuts in favor of entering a default judgment.

*Second,* the Court considers the merits of Brighthouse's substantive claim. Brighthouse's interpleader complaint is appropriate in this context. Brighthouse claims no interest in Ms. Collins' death benefit, acknowledges that its prior payment of this benefit to Mr. Schmidt in his individual capacity was not consistent with Ms. Collins' named beneficiary, and seeks the

Court's assistance in determining the proper beneficiary of the funds. Federal law allows interpleader actions in situations like this (where multiple parties may claim a right to the funds an interpleader possesses). *See, e.g.,* Fed. R. Civ. Pro. 22. This factor cuts in favor of entering a default judgment.

*Third,* the Court considers the sufficiency of the complaint. Brighthouse's interpleader complaint sufficiently states the controversy over who is entitled to the death benefits under Ms. Collins' policy and includes several supporting exhibits. Brighthouse also identifies the specific group contract number and the certificate of participation number issued to Ms. Collins for the annuity at issue. ECF No. 13 at 8. Brighthouse's allegations are uncontested by Mr. Schmidt and are now deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). This factor cuts in favor of entering a default judgment.

*Fourth,* the Court considers the sum of money at stake in the action. Brighthouse seeks to pay $307,374.87 in death benefits to the proper beneficiary. *See* ECF No. 50 at 6. This is the amount of the death benefit previously paid to Mr. Schmidt. ECF No. 13 at 11. Brighthouse does not claim any interest in this money. *Id.* at 13. Accordingly, this factor cuts in favor of entering a default judgment.

*Fifth,* the Court considers the possibility of a dispute concerning material facts. Currently, there is no dispute with Mr. Schmidt over any material facts. And given Mr. Schmidt's failure to participate in this case, a dispute over any material facts is unlikely. This factor cuts in favor of entering a default judgment.

*Sixth,* the Court considers whether the default was due to excusable neglect. There is no evidence that Mr. Schmidt's default is due to excusable neglect. Despite being personally served with process, he has not responded for over a year. *See* ECF No. 30. This factor cuts in favor of entering default judgment.

*Seventh,* the Court considers the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. While the Federal Rules favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As

Rule 55 indicates, one such instance is when a party fails to defend against an action. Thus, the preference to decide cases on the merits does not preclude a court from entering a default judgment. *Kloepping v. Fireman's Fund, No. C 94-2684 T*EH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). While cases should be decided on the merits when possible, given Mr. Schmidt's failure to participate in this case, a decision on the merits regarding his entitlement to the funds is "impractical, if not impossible." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002.). Accordingly, this factor cuts in favor of granting a default judgment.

Considering all the *Eitel* factors, the Court finds, in its discretion, that entering a default judgment against Mr. Schmidt as Trustee of the Shelly Collins Testamentary Trust is appropriate.

To the extent the parties request other forms of relief in their joint motion (ECF No. 50), the district judge assigned to this case will resolve these requests when she reviews this report and recommendation.

**IV.   Defendant MassMutual's Motion for Determination of Good Faith Settlement with Plaintiff (ECF No. 51)**

MassMutual moves the Court to find that the settlement it entered with Plaintiff was made in good faith in accordance with Nevada Revised Statute 17.245. ECF No. 51 at 1. This motion is unopposed. MassMutual seeks this finding to preclude any future claims for implied indemnity, equitable indemnity, and/or contribution against MassMutual. *Id.*

In essence, N.R.S. 17.245 provides that when a defendant settles in good faith, it discharges that defendant from liability for contribution and equitable indemnity. In full, N.R.S. 17.245 provides as follows:

> 1. When a release . . . is given in good faith to one of two or more persons liable in tort for the same injury . . . :
>    (a) It does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

      (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.
2. As used in this section, "equitable indemnity" means a right of indemnity that is created by the court rather than expressly provided for in a written agreement.

"A settling defendant seeking protection from contribution and implied indemnity claims has the burden of proving that the settlement was in good faith." *The Drs. Co. v. Vincent*, 120 Nev. 644, 657 (2004). Whether a settlement is made in good faith is left to the discretion of the trial court based on all relevant facts. *Id.* at 652. Factors the court should consider include (1) the amount of the settlement, (2) the allocation of the settlement proceeds among plaintiffs, (3) the insurance policy limits of settling defendant, (4) the financial condition of settling defendant, and (5) the existence of collusion, fraud, or tortious conduct intended to injure non-settling tortfeasors. *Id.* at 651-52. A court may also assess contribution or indemnity claims it knows about. *Id.* at 652.

Here, the Court reviewed MassMutual and Plaintiff's confidential settlement agreement *in camera* and makes the following findings.

*First*, as to the amount of settlement, the Court finds that the amount MassMutual is paying Plaintiff to settle its claims suggests a good faith settlement. While this amount is confidential under the terms of the parties' settlement agreement, the Court agrees with MassMutual's representation that it is paying a "substantial sum of money" to settle this case. *See* ECF No. 51 at 5. This factor cuts heavily in favor of finding a good faith settlement.

*Second*, as to the allocation of settlement proceeds among plaintiffs, there is only one plaintiff in this case. MassMutual noted in its motion that the settlement proceeds will technically be paid to Plaintiff's counsel, and MassMutual does not know how Plaintiff's counsel will allocate the settlement proceeds. *Id.* The Court considered this fact but ultimately determined that it does not suggest that MassMutual and Plaintiff's settlement is in bad faith. Plaintiff and his counsel's fee agreement is between them, and Plaintiff must pay his counsel whatever he agreed to. Whatever amount this is, it speaks more to the deal Plaintiff and his

attorney negotiated than it does to the deal Plaintiff and MassMutual negotiated. Accordingly, this factor cuts in favor of finding a good faith settlement between MassMutual and Plaintiff.

*Third*, as to the insurance policy limits of MassMutual, MassMutual represents that this factor is irrelevant. *Id.* This is so, according to MassMutual, because the settlement was not determined based on any issues related to insurance policy limits. *Id.* The Court agrees that MassMutual's insurance policy limits are not relevant to whether the parties' settlement was entered in good faith. This is so because (1) MassMutual is not trying to justify a lower settlement amount based on an insurance policy limit and (2) the Court already found the settlement amount to be substantial. This factor cuts in favor of finding a good faith settlement.

*Fourth*, as to the financial condition of MassMutual, MassMutual represents that this factor is also irrelevant. *Id.* at 5-6. This is so, according to MassMutual, because the financial condition of MassMutual was not a factor in settlement, and the parties did not consider a reduction in settlement because of the financial status of MassMutual. *Id.* The Court agrees that MassMutual's financial condition is not relevant to the parties' settlement. This is so because (1) MassMutual is not trying to justify a lower settlement amount based on its financial condition and (2) again, the Court already found the settlement amount to be substantial. This factor cuts in favor of finding a good faith settlement.

*Fifth*, as to the existence of collusion, fraud, or tortious conduct intended to injure non-settling tortfeasors, MassMutual represents that there was no such conduct involved in settlement. *Id.* at 6. The Court is not aware of any such conduct or an intent to injure non-settling tortfeasors. Nothing in the settlement agreement itself suggests otherwise. This factor cuts in favor of finding a good faith settlement.

Additionally, the Court notes that it is unaware of any current or potential contribution or indemnity claims.

Finally, the Court notes that other facts suggest that the parties' settlement was entered in good faith. Specifically, the parties settled after mediating this case over several days with a professional mediator. *Id.* at 6. Both parties were represented by experienced counsel during the

mediation. *Id.* Settlement only resulted after these extensive arms-length negotiations, during which MassMutual maintained (and still maintains) that it is not liable to Plaintiff. *Id.* This process further suggests that the settlement was entered in good faith.

Considering all these facts, the Court finds that MassMutual and Plaintiff's settlement was entered in good faith under N.R.S. 17.245.

## V. Recommendations and Order

**IT IS THEREFORE RECOMMENDED** that Plaintiff and Brighthouse's joint motion (ECF No. 50) be GRANTED to the extent it seeks a default judgment against Mr. Schmidt as Trustee of the Shelly Collins Testamentary Trust. To the extent the parties request other forms of relief in their joint motion, the district judge assigned to this case will resolve these requests when she reviews this report and recommendation.

**IT IS FURTHER RECOMMENDED** that default judgment be entered against George Schmidt, as Trustee of the Shelly Collins Testamentary Trust.

**IT IS FURTHER ORDERED** that Defendant MassMutual's motion for determination of good faith settlement with Plaintiff (ECF No. 51) is GRANTED.

## NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 12, 2021

Brenda Weksler
United States Magistrate Judge